**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| MARTIN KLADNY )<br><br>Petitioner, )<br><br>vs. )<br><br>ALEXANDRA JAZMIN RUIZ DEZA, )<br><br>Respondent. ) | Case No. 2:25-cv-05754 |

**MOTION TO VACATE JUDGMENT PURSUANT TO RULE 59(e) AND 60(b) OF THE FEDERAL RULES OF CIVIL PROCEDURE**

Camilla Redmond Costa, Esq.
Green Kaminer Min & Rockmore LLP
420 Lexington Avenue, Suite 2821
New York, NY 10170
212-681-6400
Email: credmond@gkmrlaw.com

*Attorneys for Respondent*

## TABLE OF CONTENTS

I.      INTRODUCTION ……………………………………………………………5

II.     BRIEF FACTUAL SUMMARY AND PROCEDURAL
        BACKGROUND…………………………………………………………....5

III.    ARGUMENT……………………………………………………………….7

        A.  Legal Standard……………………………………………………7

                i.      Jurisdiction……………………………………………………7

                ii.     Rule 59(e) Relief……………………………………………7

                iii.    Rule 60(b) Relief……………………………………………7

        B.  Post-Trial Developments…………………………………………7

                i.      Medical Reports from Argentina……………………………10

                ii.     Post-Traumatic Stress Disorder Diagnosis…………………12

IV.     CONCLUSION……………………………………………………………..16

**TABLE OF AUTHORITIES**

**Cases**

*Blondin v. Dubois*, 238 F.3d 153 (2d Cir. 2001)................................................................. 14

*Cruvinel v. Cruvinel*, No. 19-CV-4237, 2022 WL 757955 (E.D.N.Y. Jan. 10, 2022)................... 12

*Danaipour v. McLarey*, 286 F.3d 1 (1st Cir. 2002) ..................................................... 15

*Elyashiv v. Elyashiv,* 353 F. Supp. 2d 394 (E.D.N.Y. 2005)........................................... 15

*Ermini v. Vittori,* 758 F.3d 153 (2d Cir. 2014) ........................................................ 12

*Felberbaum v. Felberbaum,* No. 24-CV-02333 (PMH), 2025 WL 3442905 (S.D.N.Y. Dec. 1, 2025)

.................................................................................................................. 15

*Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56 (1982)........................................ 7

*Jacquety v. Baptista,* 538 F. Supp. 3d 325 (S.D.N.Y. 2021) ............................................ 9

*Moreno v. Escamilla*, No. 23 CV 15736, 2024 WL 4762782 (N.D. Ill. Nov. 12, 2024)............... 15

*Nowlan v. Nowlan,* 543 F. Supp. 3d 324 (W.D. Va. 2021), aff'd, No. 21-1965, 2022 WL 34141

(4th Cir. Jan. 4, 2022)................................................................................. 9

*Reyes Olguin v. Cruz Santana*, No. 03 CV 6299 JG, 2005 WL 67094 (E.D.N.Y. Jan. 13, 2005)..... 15

*Sorenson v. Wolfson*, 2015 WL 4095197 (S.D.N.Y. July 7, 2015) ...................................... 9

*Souratgar v. Lee*, 720 F.3d 96 (2d Cir. 2013)) .......................................................... 12

*Saada v. Golan,* No. 18CV5292AMDRML, 2021 WL 1176372 (E.D.N.Y. Mar. 29, 2021), *aff'd*, No.

21-876-CV, 2021 WL 4824129 (2d Cir. Oct. 18, 2021) ....................................... 8, 13

*Leslie Williams, Plaintiff, v. William Mulligan, et al., Defendants.*, No. 3:23-CV-725 (SVN), 2026

WL 607400 (D. Conn. Mar. 4, 2026)................................................................ 8

*Francis v. Culley,* No. 20CV3326PKCSJB, 2021 WL 3660719 (E.D.N.Y. Aug. 18, 2021).............. 7

*Walsh v. Walsh,* 221 F.3d 204, 221-22 (1st Cir. 2000)…………………………………....……15

**Other Authorities**

Fed. R. App. P. 4(a)(4)(A) ................................................................................................ 7

Fed. R. App. P. 4(a)(4)(B)(i) ........................................................................................... 7

Fed. R. Civ. P. 59(e). ....................................................................................................... 7

Fed. R. Civ. P. 60(b)(2). .................................................................................................. 8

Fed. R. Civ. P. 60(c)(1) ................................................................................................... 8

Hague Convention on the Civil Aspects of International Child Abduction, Oct. 25, 1980, T.I.A.S.

No. 11670, 1343 U.N.T.S. 89 ..................................................................................... 5

International Child Abduction Remedies Act, 22 U.S.C. § 9001 et seq. ("ICARA") ........................ 5

## I.    INTRODUCTION

Respondent submits this Motion to Vacate Judgment pursuant to Federal Rule of Civil Procedure 59(e) and/or 60(b) on the basis of newly discovered evidence that was unavailable at the time of the evidentiary hearing through no fault of Respondent. Specifically, Respondent has obtained medical records from Argentina that substantiate her trial testimony regarding the domestic violence she suffered at the hands of Petitioner, and the minor child, M.K.R. (the "Child") has received a formal psychiatric diagnosis of Post-Traumatic Stress Disorder ("PTSD") and Major Depressive Disorder with Anxious Distress ("Depression") from a treating psychiatrist — diagnoses that were expressly pending at the time of trial.

In its Memorandum and Order granting Petitioner's Petition, dated February 19, 2026 (the "Return Order"), this Court found, *inter alia*, that Respondent failed to meet the clear and convincing burden for her grave risk of harm defense pursuant to Article 13(b) of the Hague Convention. This newly discovered evidence directly addresses the evidentiary gaps identified by this Court in its Return Order and, when considered alongside the record as a whole, evidences that returning the Child to Argentina would expose her to a grave risk of physical and psychological harm within the meaning of the Hague Convention on the Civil Aspects of International Child Abduction. Accordingly, Respondent respectfully requests that this Court vacate its February 20, 2026 Judgment (ECF No. 62) and deny Petitioner's Petition for the Child's return to Argentina. In the alternative, Respondent respectfully requests that this matter be reopened for a supplemental evidentiary hearing.

## II.    BRIEF FACTUAL SUMMARY AND PROCEDURAL BACKGROUND

On October 14, 2025, Petitioner Martin Kladny ("Mr. Kladny" or "Petitioner") filed a petition in this Court  pursuant to the Hague Convention on the Civil Aspects of International Child Abduction, Oct. 25, 1980, T.I.A.S. No. 11670, 1343 U.N.T.S. 89 ("Hague Convention" or "Convention"), and its

implementing legislation in the United States, the International Child Abduction Remedies Act, 22 U.S.C. § 9001 et seq. ("ICARA"), seeking return of the Child to Argentina (the "Petition"), alleging that Respondent Alexandra Jazmin Ruiz Deza ("Ms. Deza" or "Respondent") wrongfully retained the Child on or about February 18, 2025 in the United States from her habitual residence of Argentina. ECF No. 1.

In her Verified Answer, filed on December 17, 2025, Respondent challenged Petitioner's *prima facie* case and further asserted three affirmative defenses: (1) that returning M.K.R. to Argentina would expose her to physical or psychological harm under Article 13(b); (2) that M.K.R. objects to return and is sufficiently mature for her views to be considered; and (3) that return would violate fundamental American principles of human rights under Article 20. ECF No. 18.

Following a seven-day bench trial beginning January 12, 2026, this Court issued a Return Order on February 19, 2026, granting the Petition and ordering the Child to be returned to Argentina, concluding that Petitioner had proven a *prima facie* case for return and that Respondent had not sufficiently demonstrated any relevant defense. ECF No. 60. This Court also directed the parties to submit a return plan, including travel details and passport release instructions, by February 20, 2026. *Id*. at 34. Judgment was entered by the Clerk of Court on February 20, 2026. ECF No. 62 (the "Judgment").

On February 20, 2026, Respondent filed a Notice of Appeal in this Court. ECF No. 63. That same day, the parties filed their respective proposed orders, in compliance with this Court's order. ECF No. 60. In her proposed order, Respondent respectfully requested a brief administrative stay pending the Second Circuit's determination on Respondent's Emergency Stay Motion, which was filed on February 24, 2026 (2d. Cir. Dkt. No. 13.1). This Court granted the requested relief on February 24,

6

2026. Respondent's Emergency Stay Motion is scheduled to be heard by a three-judge panel in the Second Circuit on March 31, 2026 (2d. Cir. Dkt. No. 28.1).

## III. ARGUMENT

### A. Legal Standard

#### i. *Jurisdiction*

Respondent filed a Notice of Appeal of this Court's Return Order (ECF No. 60) and the subsequent Judgment (ECF No. 62) on February 20, 2026 (ECF No. 63). "The filing of a notice of appeal is an event of jurisdictional significance – it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56, 58 (1982). Nonetheless, Rule 4 of the Federal Rules of Appellate Procedure provides that a district court has jurisdiction to rule on a motion under Rule 59 or Rule 60 if a notice of appeal has been filed, but only if the motion is filed within 28 days after the entry of the order. Fed. R. App. P. 4(a)(4)(A). If a party files a notice of appeal before the district court disposes of such a motion, then the notice of appeal does not become "effective" until after the district court rules on that motion. *See* Fed. R. App. P. 4(a)(4)(B)(i).

Here, the Clerk of Court entered judgment on February 20, 2026 (ECF No. 62). Respondent's instant motion pursuant to Rule 59 and 60 of the Federal Rules of Civil Procedure is therefore timely.

#### ii. *Rule 59(e) Relief*

Rule 59(e) provides that a motion to alter or amend the judgment must be filed no later than 28 days after the entry of judgment. Fed. R. Civ. P. 59(e). "A court may grant a Rule 59(e) motion only when the [movant] identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Francis v. Culley,* No. 20CV3326PKCSJB, 2021 WL 3660719 (E.D.N.Y. Aug. 18, 2021) (internal citations omitted). Rule

59(e) "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Leslie Williams, Plaintiff, v. William Mulligan, et al., Defendants.*, No. 3:23-CV-725 (SVN), 2026 WL 607400 (D. Conn. Mar. 4, 2026) (internal citations omitted). And "[i]t is well-settled that Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Id.*

### iii.    <u>Rule 60(b) Relief</u>

Rule 60(b)(2) of the Federal Rules of Civil Procedure provides relief in the face of "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." Fed. R. Civ. P. 60(b)(2). A Rule 60(b)(2) motion must be made "no more than a year after the entry of the judgment or order or the date of the proceeding," Fed. R. Civ. P. 60(c)(1), and may not be used "simply to relitigate matters settled by the original judgment." *Saada v. Golan,* No. 18CV5292AMDRML, 2021 WL 1176372 at *3 (E.D.N.Y. Mar. 29, 2021), *aff'd*, No. 21-876-CV, 2021 WL 4824129 (2d Cir. Oct. 18, 2021) (internal citations omitted). " The decision to grant a motion for relief under Rule 60(b) is left to the discretion of the court." *Id.* "Whether relief is sought under Rule 59(e) or Rule 60(b)(2), courts apply the same strict standard for determining what qualifies as 'newly discovered evidence.' " *Francis,* 2021 WL 3660719 at *12.

### B.  <u>Post-Trial Developments</u>

To prevail on a "newly discovered evidence" claim, the movant must demonstrate that "(1) the newly discovered evidence was of facts that existed at the time of trial or other dispositive proceeding, (2) the movant must have been justifiably ignorant of them despite due diligence, (3) the evidence must be admissible and of such importance that it probably would have changed the outcome, and (4) the evidence must not be merely cumulative or impeaching." *Id.* at *9.

These factors are all met here. First, the underlying facts — Respondent's hospitalization following the domestic violence incidents in Argentina and the Child's developing psychiatric condition — existed at the time of the evidentiary hearing; it is the documentary evidence memorializing those facts that was unavailable. Respondent testified about the several incidents where she was a victim of domestic violence and was hospitalized as a result of Petitioner's violence. Tr. at 514:4-16, Tr. at 538:1-539:2. Moreover, Dr. Favaro testified to the severe re-traumatization that the Child would face if she were forced to return to Argentina. Tr. at 771:17-25. He further testified that the Child's American therapist was in the process of assessing the child for a possible PTSD diagnosis. Second, Respondent was justifiably ignorant of the newly discovered evidence because (1) she was not able to obtain the Argentine medical records in time for the trial, despite diligently pursuing their production, due to the truncated schedule and (2) she had never seen the medical records before, because she did not request them at the time as she was young and she did not think she needed them, so she was not aware of the specific contents of records until she recently received them. Pertaining to the Child's formal PTSD diagnosis, it had not yet been rendered by her treating psychiatrist as of the close of evidence and therefore the facts could not have been discovered by a diligent search. *Sorenson v. Wolfson*, 2015 WL 4095197, at *3 (S.D.N.Y. July 7, 2015) (newly discovered evidence "must have been unknown to the movant at the time of trial, and the movant must have been excusably ignorant of the facts – meaning that the facts could not have been discovered by a diligent search") (internal citations omitted). Third, the evidence is admissible as the medical records are business records of the Argentine hospitals and Dr. Idalia Cruz's PTSD diagnostic report would fall under the Rule 803(4) hearsay exception or under the residual hearsay exception. *See Jacquety v. Baptista,* 538 F. Supp. 3d 325 (S.D.N.Y. 2021) (child's statements to mental health care professional were admissible under hearsay exception for statements made for the purpose of medical diagnosis or treatment); *Nowlan*

*v. Nowlan,* 543 F. Supp. 3d 324 (W.D. Va. 2021), aff'd, No. 21-1965, 2022 WL 34141 (4th Cir. Jan. 4, 2022) (statements made by child relating to potential sexual abuse were admissible under residual exception to the hearsay rule). Also, the newly discovered evidence is of such importance that they would likely have changed the outcome, as this Court expressly identified the absence of contemporaneous medical documentation and a formal PTSD diagnosis as central deficiencies in Respondent's Article 13(b) grave risk of harm defense. Fourth, this evidence is not merely cumulative or impeaching; it is affirmative clinical and documentary proof that directly fills the evidentiary gaps this Court identified, and it corroborates rather than merely repeats what was already in the record.

### i.    *Medical Reports from Argentina*

In its Return Order, this Court noted that "Respondent ha[d] failed to present any contemporaneous communications or medical records related to the alleged incidents, which would be particularly probative of Respondent's hospitalization when Petitioner allegedly kicked her in the stomach while pregnant … and of her trip to the hospital in an ambulance when she allegedly jumped out of Petitioner's moving car." (ECF No. 60 at 22). Furthermore, pertaining to the incident the day before the Child's birth, this Court stated that "[t]here was no testimony regarding the impact of the alleged incident on the birth of the Child, nor did Respondent produce any documentation, medical or otherwise, related to the incident." *Id.* at n.5.

Respondent attempted to obtain the contemporaneous medical documentation from Argentina in December when the evidentiary hearing in this matter was scheduled. However, the incidents at issue occurred in Argentina over five (5) years ago, and the various Argentine hospitals advised that retrieving archived records would require around two (2) to three (3) months because of that. Even before the trial in this matter was scheduled, Respondent, at the December 12, 2025 conference, informed this Court that additional time was necessary to obtain discovery from

Argentina, and she memorialized that request in a subsequent pre-motion conference request letter. *See* ECF No. 15 at 3 ("Additionally, the parties require at least limited discovery, as there are documents located in Argentina to which Respondent does not currently have access, but are believed to be necessary to support her affirmative defenses."). Once discovery was permitted, Respondent served production requests on Petitioner accordingly. Petitioner, in responding, never represented that he had searched for or possessed any Argentine medical records bearing on Respondent's grave risk defense. Because Respondent had no direct access to records held by the Argentine hospitals, she was forced to pursue their retrieval from the United States, relying in part on her parents to help expedite the process from Argentina. Despite those efforts, the records could not be obtained before the evidentiary hearing commenced.

Since filing her Emergency Stay Motion in the Second Circuit, however, Respondent has received several of those medical records. The medical records which Respondent has been able to obtain at this juncture are annexed hereto as **Exhibit A.** The newly produced Argentine medical records directly address the evidentiary gap identified by this Court and would have materially altered this Court's final determination, as they substantiate Respondent's account of the spousal abuse she suffered in Argentina, including those incidents bearing directly on the minor Child. For example, the medical record from September 3, 2018, the day before the Child's birth, reflects that "multiple trauma" was identified following an ultrasound. *See* Exhibit A at 17. Respondent testified that on that date, Petitioner pushed her and kicked her twice while she was on the ground. Tr. at 514:4-16.

This Court also held in its Return Order that "Respondent [could not] establish by clear and convincing evidence that past alleged spousal abuse would expose the Child to a grave risk of psychological harm upon her return to Argentina, as there are no memories upon which the Child

11

could face re-traumatization." ECF No. 60 at 25. That conclusion, however, must be reconsidered in light of both the newly produced evidence and the governing legal standard.

Courts have consistently found a grave risk of harm where the petitioning parent engaged in repeated acts of domestic violence. *See, e.g., Ermini v. Vittori,* 758 F.3d 153, 164 (2d Cir. 2014) ("Domestic violence can satisfy the defense when the respondent shows by clear and convincing evidence a 'sustained pattern of physical abuse and/or a propensity for violent abuse.'" (*quoting Souratgar v. Lee*, 720 F.3d 96, 104 (2d Cir. 2013))). The Hague Convention itself explicitly recognizes that a child's interest in avoiding physical or psychological harm "may overcome the return remedy," *Golan v. Saada*, 596 U.S. 666, 668 (2022), and courts are obligated to conduct this inquiry with the understanding that "the Convention sets as a primary goal the safety of the child." *Id.* This is an inherently "fact-intensive" analysis requiring consideration of "a wide range of conduct, including manipulative or alienating behavior, physical or psychological abuse, spousal abuse, [and] the petitioner's general pattern of or propensity for violence." *Cruvinel v. Cruvinel*, No. 19-CV-4237, 2022 WL 757955, at *6 (E.D.N.Y. Jan. 10, 2022).

The recently obtained Argentine records corroborate Respondent's trial testimony regarding the incidents of domestic violence she suffered at the hands of Petitioner and substantiate Petitioner's propensity for violent abuse — the precise showing required under *Ermini* and *Souratgar*. When considered alongside Dr. Cruz's formal diagnosis of PTSD and Depression, discussed below, this evidence establishes by clear and convincing evidence that the Child faces a grave risk of psychological harm if returned to Argentina.

### ii.  *Post-Traumatic Stress Disorder Diagnosis*

This Court also found that Dr. Favaro's conclusion that the Child would face re-traumatization upon returning to Argentina was "speculative and not based on the credible facts and admitted evidence

in this action." (ECF No. 60 at 29). Central to that finding was the observation that "Dr. Favaro did not diagnose the Child with post-traumatic stress disorder ('PTSD'), and he further testified that the Child's American therapist had not diagnosed her with PTSD." *Id.*

Respondent, however, clarifies that Dr. Favaro was retained as a forensic expert, not as a treating physician, and therefore, he could not render a clinical diagnosis. Moreover, Dr. Favaro did not testify that PTSD had been ruled out; he testified that the Child's American therapist was actively in the process of ruling it out. At the time of the evidentiary hearing, the Child was on a waiting list to be evaluated by a psychiatrist at Hispanic Counseling Center, the therapy clinic where she has been treated by a psychologist since September 2025.

That evaluation has now taken place. On March 11, 2026, after this Court issued its Return Order granting Petitioner's Petition, psychiatrist Dr. Idalia Cruz officially diagnosed the Child with PTSD (F43.10) and Major Depressive Disorder (F32.1), with moderate anxious distress. Dr. Cruz also prescribed the Child Sertraline 25mg once a day to treat depressive and anxiety symptoms. A copy of Dr. Cruz's diagnostic letter is annexed hereto as **Exhibit B**, and her full report is annexed hereto as **Exhibit C**. This diagnosis is precisely the clinical confirmation that was pending at the time of trial, and it directly substantiates Dr. Favaro's expert opinion regarding the grave psychological risk the Child would face upon return to Argentina. This newly discovered evidence would have undeniably bolstered Respondent's Article 13(b) defense during the evidentiary hearing.

The decision on remand in *Saada v. Golan,* 712 F. Supp. 3d 361 (E.D.N.Y. 2024) is particularly instructive here. There, the district court had initially granted the petitioner's petition for return of the child to Italy as "the evidence established that [the child] would not face a grave risk of harm if he were returned." *Id.* at 363. Following multiple rounds of appeal, the district court was once again tasked

13

with deciding whether to return a seven-year-old child to Italy. A court-appointed mental health professional, Dr. Karen N. Surowiec, diagnosed the child with PTSD. *Id.* at 374. Dr. Surowiec also found that the child was exhibiting the following symptoms: "nightmares, night terrors, avoidance, increased irritability, behavioral regression, sleep disturbances, hypervigilance, fears, and emotional numbing." *Id*. The district court reasoned that "the [c]ourt's task in determining "grave risk" is not to determine whether psychological harm is a *certainty*; rather, it is to determine whether there is a *risk* of harm." *Id.* at 375 (internal citations omitted). The court further found that the expert's "uncontradicted opinion more than satisfies the clear and convincing standard of proof and is sufficient on its own to deny the petition." *Id.* at 376. Ultimately, the district court concluded that " the mere process of uprooting this fragile seven-year-old, diagnosed with PTSD…, as well as the uncertainty about what would happen if he were returned to Italy, would expose him to a grave risk of psychological harm and put him in an intolerable situation." *Id*.

Similarly here, like the child in *Saada*, the Child here has now received a formal psychiatric diagnosis of PTSD and Depression from a treating psychiatrist, Dr. Cruz. This diagnosis was pending at the time of the evidentiary hearing. Dr. Favaro opined at the evidentiary hearing in this matter that the Child would face re-traumatization if she was returned to Argentina. Tr. at 771: 17-25. And like the petitioner in *Saada*, Petitioner here cannot point to any contradicting expert opinion. Therefore, "uprooting this fragile seven-year-old, diagnosed with PTSD…, as well as the uncertainty about what would happen if [s]he were returned to [Argentina], would expose [her] to a grave risk of psychological harm and put [her] in an intolerable situation." *Id*.

Accordingly, Respondent respectfully moves this Court to vacate its judgment and deny the Petition pursuant to Federal Rule of Civil Procedure 59(e) and 60(b) based on this newly discovered evidence as courts have routinely found that the effects of PTSD and possibility of PTSD related harm

14

upon return constitutes grave risk under Article 13(b) of the Hague Convention. *See, e.g., Danaipour v. McLarey,* 286 F.3d 1, 17 (1st Cir. 2002) (holding that evidence regarding PTSD can have "a direct bearing on grave risk determinations"); *Blondin v. Dubois,* 238 F.3d 153, 158 (2d Cir. 2001) (affirming district court's grave risk determination based on a finding the children would suffer from a recurrence of PTSD); *Elyashiv v. Elyashiv,* 353 F. Supp. 2d 394, 408 (E.D.N.Y. 2005) (grave risk of harm where children had experienced physical abuse from father, had witnessed his abuse of their mother, and expert testified that their return to Israel would trigger post-traumatic stress disorders, as well as 14-year-old's suicidal ideations); *Reyes Olguin v. Cruz Santana,* No. 03 CV 6299 JG, 2005 WL 67094, at *6-8 (E.D.N.Y. Jan. 13, 2005) (denying petition on record of frequent violence in front of the children and expert testimony that a return to Mexico would exacerbate the PTSD suffered by the older child); *Walsh v. Walsh*, 221 F.3d 204, 221-22 (1st Cir. 2000)) (grave risk of harm where child diagnosed with post-traumatic stress disorder due to father's conduct); *Felberbaum v. Felberbaum,* No. 24-CV-02333 (PMH), 2025 WL 3442905 (S.D.N.Y. Dec. 1, 2025) (return would exacerbate existing PTSD of children).

Furthermore, in *Moreno v. Escamilla*, No. 23 CV 15736, 2024 WL 4762782 (N.D. Ill. Nov. 12, 2024), the children were diagnosed with Post-Traumatic Stress Disorder and Generalized Anxiety Disorder. Respondent's witness, who was the children's pediatrician and who conducted a mental health assessment, found "that [the child] feared returning to [the petitioner] and that if [the child] returned to Mexico, it would compound his already existing trauma." *Id.* at *8. The court found that the doctor's assessment further supported a finding of grave risk of psychological harm to the children. *Id.* The court ultimately denied the petitioner's request for the return of the children to Mexico because there was a "grave risk that return of the children to Mexico would expose them to physical or psychological harm." *Id.* at *1.

15

Here, as in *Moreno*, the Child has PTSD and Depression from the traumatic experiences she endured while living in Argentina. Dr. Favaro, Respondent's forensic expert, opined that the Child feared returning to the Petitioner in Argentina, and that if she returns, she would face re-traumatization. Dr. Cruz then diagnosed the Child with PTSD and Depression on March 11, 2026. The Child's PTSD alone is sufficient to support a finding that her return would expose her to a grave risk of harm.

## IV.    CONCLUSION

For the foregoing reasons, Respondent respectfully requests that this Court vacate its February 20, 2026 Judgment (ECF No. 62) and deny Petitioner's Petition for the Child's return to Argentina. In the alternative, Respondent respectfully requests that this matter be reopened for a supplemental evidentiary hearing. The newly discovered medical records corroborating Respondent's account of the domestic violence incidents, together with the formal psychiatric diagnosis of PTSD and Depression rendered after the close of evidence, constitute precisely the type of compelling, contemporaneous documentation this Court found lacking. Taken together, this evidence establishes that returning the Child to Argentina would pose a grave risk of psychological harm to the Child within the meaning of the Hague Convention.

Dated:  March 20, 2026
    New York, New York

Respectfully submitted,

/s/ Camilla Redmond Costa
Camilla Redmond Costa
Green Kaminer Min & Rockmore LLP
420 Lexington Avenue, Suite 2821
New York, NY 10170
Tel: (212) 681-6400

16

Fax: (212) 681-6999
credmond@gkmrlaw.com

*Attorneys for Respondent*