UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
MARTIN KLADNY,

                Petitioner,

          -against-

ALEXANDRA JAZMIN RUIZ DEZA,

                Respondent.
-------------------------------------------------------------------x

**MEMORANDUM AND ORDER**
25-CV-5754 (OEM)

ORELIA E. MERCHANT, United States District Judge:

On October 14, 2025, Martin Kladny ("Petitioner") petitioned this Court for the return of his child, M.K.R. ("Child"), to Argentina pursuant to the Hague Convention on the Civil Aspects of International Child Abduction, Oct. 25, 1980, T.I.A.S. No. 11,670 ("Hague Convention" or "Convention") and the International Child Abduction Remedies Act, 22 U.S.C. §§ 9001 *et seq.* ("ICARA"). Verified Petition for Return of the Child, Dkt. 1 ("Petition" or "Pet."). After an evidentiary hearing held on January 12-14 and 20-23, 2026 ("Hearing"), the Court granted the Petition, ordering the return of the Child to Argentina, her country of habitual residence, Memorandum and Order at 34, Dkt. 60 ("Order"), and on February 20, 2026, judgment was entered in favor of Petitioner, Judgment, Dkt. 62. That same date, Alexandra Jazmin Ruiz Deza ("Respondent") filed a notice of appeal, Notice of Appeal, Dkt. 63, and on February 24, 2026, Respondent filed a motion for stay of enforcement of the Order with the U.S. Court of Appeals for the Second Circuit, Respondent-Appellant's Emergency Motion for Stay Pending Appeal, *Kladny v. Deza*, 26-389 (2d Cir. Feb. 24, 2026), Dkt. 13 ("Appellate Motion for Stay"). On May 20, 2026, the U.S. Court of Appeals for the Second Circuit denied the Appellate Motion for Stay. Motion Order, *Kladny*, 26-389 (2d Cir. May 20, 2026), Dkt. 43.

On May 22, 2026, the Court ordered the immediate return of the Child to Argentina, Order Directing Return of Minor Child to Argentina, Dkt. 96, and the Child arrived safely in Argentina on May 25, 2026, Letter from Petitioner to the Court (May 26, 2026), Dkt. 99 ("Return Letter").

Before the Court is Petitioner's fully briefed motion for costs. *See* Petitioner's Motion for Costs Pursuant to Rule 54(d), 28 U.S.C. § 1920, The Hague Convention, and ICARA, Dkt. 90 ("Motion" or "Mot"); Respondent's Response in Opposition to Petitioner's Motion for Costs, Dkt. 91 ("Opposition" or "Opp'n"); Petitioner's Reply in Support of His Motion for Costs Pursuant to Rule 54(d), 28 U.S.C. § 1920, The Hague Convention, and ICARA, Dkt. 92 ("Reply").

For the following reasons, Petitioner's Motion is granted in part and denied in part, and the Court awards Petitioner $22,274.14 in costs.

## LEGAL STANDARDS

### A. The Hague Convention and ICARA

Article 26 of the Hague Convention authorizes courts that order a child's return to require the person who wrongfully removed or retained the child to reimburse the petitioner for necessary expenses in securing the child's return. *See* Hague Convention art. 26. Expanding on Article 26, ICARA provides that

> [a]ny court ordering the return of a child pursuant to an action brought under section 9003 of this title shall order the respondent to pay necessary expenses incurred by or on behalf of the petitioner, including court costs, legal fees, foster home or other care during the course of proceedings in the action, and transportation costs related to the return of the child, unless the respondent establishes that such order would be clearly inappropriate.

22 U.S.C. § 9007(b)(3). ICARA establishes a presumption in favor of awarding a prevailing petitioner's "necessary expenses." *See Ozaltin v. Ozaltin*, 708 F.3d 355, 375 (2d Cir. 2013) ("Although Article 26 of the Hague Convention provides that a court 'may' award 'necessary expenses' to a prevailing petitioner, [ICARA § 9007(b)(3)] shifts the burden onto a losing

2

respondent in a return action to show why an award of 'necessary expenses' would be 'clearly inappropriate.'" (quoting 22 U.S.C. § 9007(b)(3))).  This presumption is "subject to the application of equitable principles by the district court."  *Id.*  "[T]he appropriateness of such costs depends on the same general standards that apply when 'attorney's fees are to be awarded to prevailing parties only as a matter of the court's discretion.'"  *Id.* (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994)).

In considering whether an award of costs is "clearly inappropriate," courts in this Circuit consider:

> (1) whether there was "a reasonable basis for removing the children to the United States"; (2) whether either party "engaged in forum shopping"; (3) "the degree to which the petitioner bears responsibility for the circumstances giving rise to the fees and costs associated with a petition"; (4) "a respondent's inability to pay an award"; (5) whether fees and costs "will deter such conduct from happening in the first place"; and (6) whether the case is "not a 'difficult one' and 'falls squarely within the heartland of the Hague Convention.'"

*Nissim v. Kirsh,* 18-cv-11520 (ALC), 2020 WL 3496988, at *2 (S.D.N.Y. June 29, 2020) (citations omitted).

## B.  Federal Rule of Civil Procedure 54(d)

Federal Rule of Civil Procedure Rule 54(d) ("Rule 54(d)") permits district courts to award costs to the prevailing party.  *See* FED. R. CIV. P. 54(d) ("Unless a federal statute, these rules, or a court order provides otherwise, costs . . . should be allowed to the prevailing party."); *see also Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 377 (2013) ("Rule 54(d)(1) codifies a venerable presumption that prevailing parties are entitled to costs.").  "[T]he decision whether to award costs to a prevailing party ultimately lies within the sound discretion of the district court." *Id*

3

### C. 28 U.S.C. § 1920

Under 28 U.S.C. § 1920:

[a] judge or clerk of any court of the United States may tax as costs the following: (1) [f]ees of the clerk and marshal; (2) [f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) [f]ees and disbursements for printing and witnesses; (4) [f]ees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) [d]ocket fees . . . ; and (6) [c]ompensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services.

Courts have awarded reasonable costs to prevailing Hague Convention petitioners under 28 U.S.C. § 1920. *See, e.g.*, *Tereshchenko v. Karimi*, 23cv2006 (DLC), 2024 WL 3342759, at \*5 (S.D.N.Y. July 9, 2024).

## DISCUSSION

Petitioner seeks costs in the amount of $57,274.14 for translation services, interpreting services, psychological expert fees, transcripts, and Argentine legal services. Reply at 5-9. Respondent contends that Petitioner's Motion should be denied in its entirety, asserting that it is "clearly inappropriate." Opp'n at 7.

### A. Appropriateness of the Award

When arguing that Petitioner's Motion is "clearly inappropriate" under ICARA, Respondent makes five main arguments. First, Respondent contends that she had "a reasonable basis for [retaining the Child in] the United States," Opp'n at 18 (quoting *Ozaltin*, 708 F.3d at 375). Specifically, Respondent argues that her retention of the Child is attributable to Petitioner's spousal and child abuse and that "equity does not favor granting relief to a party whose own inequitable conduct is directly related to the relief sought." Opp'n at 14 (citing *Souratgar v. Lee Jen Fair*, 818 F.3d 72, 79). In response, Petitioner asserts that the Court already rejected Respondent's abuse allegations in the Order. Reply at 4.

The Court declines to find that Respondent's retention of the Child was reasonable. Unlike in *Souratgar*, where the respondent had "shown that the petitioner engaged in multiple, unilateral acts of intimate partner violence against her and that her removal of the child from the habitual country was related to that violence," 818 F.3d at 80, the Court did not find the allegations of spousal abuse to be credible or to have occurred in such a manner to substantiate allegations of abuse to the Child. *See* Order at 22 ("[W]hile spousal abuse may have occurred during the parties' relationship, the evidence presented by Respondent is incomplete and inconsistent, leading the Court to question Respondent's credibility as well as the frequency and extent of the alleged abuse."). Additionally, setting aside the abuse allegations, Respondent's retaining the Child in the United States violated Petitioner's custody rights under Argentine law. *See* Order at 19-20. There is no reasonable basis for the Child's retention in these circumstances. *Cf. Ozaltin*, 708 F.3d at 375 (finding that the respondent "had a reasonable basis for thinking at the time of removing the children to the United States in 2011 that her actions were consistent with Turkish law").

Second, Respondent argues that an award of costs would be "clearly inappropriate" given her financial circumstances. Opp'n at 14-15; *see Souratgar*, 818 F.3d at 81 ("[A] respondent's inability to pay an award is a relevant equitable factor for courts to consider in awarding expenses under ICARA."). Respondent states that she makes approximately $1,500 to $1,700 bi-weekly, all of which is applied to her rent and expenses for the Child. Declaration of Respondent Alexandra Jazmin Ruiz Deza ¶ 5, Dkt. 91-1 ("Deza Decl."). She further states that requiring her to pay Petitioner's expenses "would impose an extreme and unjust hardship and would further impair [her] ability to provide for the basic needs of the Child." *Id.* ¶ 8. Petitioner contends that Respondent's financial assertions are internally inconsistent and not sufficiently supported. Reply at 3-4.

Respondent's financial situation does not warrant the complete denial of Petitioner's request for costs. Financial hardship is only one relevant equitable factor, among several, and courts often reduce awards rather than deny them outright. *See, e.g.*, *Grano v. Martin*, 19-CV-6970 (CS), 2021 WL 3500164, at \*10 (S.D.N.Y. Aug. 9, 2021); *Nunez v. Portes*, 23-CV-5571 (VEC), 2024 WL 1155433, at \*4 (S.D.N.Y. Mar. 15, 2024). Moreover, this case does not present exceptional circumstances whereby a respondent completely lacks independent means. *See, e.g.*, *Poliero v. Centenaro*, 09–CV–2682 (RRM)(CLP), 2009 WL 2947193, at \*22 (E.D.N.Y. Sept. 11, 2009), *aff'd* 373 F. App'x 102 (2d Cir. 2010) (finding an award of costs clearly inappropriate where "petitioner controls all of the finances, and [where] respondent has no appreciable assets of her own, is not employed, and lives on the money that petitioner transfers to her bank account"). Here, Respondent is employed and obtained private counsel for this litigation, *see* Deza Decl. ¶¶ 5, 9, thereby demonstrating some financial capability. Further, the Child has returned to Argentina pursuant to the Court's Order, *see* Return Letter, so Respondent can no longer claim that all her salary goes to rent and expenses for the Child, Deza Decl. ¶ 5. Accordingly, while the Court considers Respondent's financial situation when calculating the award of costs, her finances do not render an award of costs "clearly inappropriate."

Third, regarding "the degree to which the petitioner bears responsibility for the circumstances giving rise to the fees and costs associated with a petition," *Souratgar*, 818 F.3d at 79, Respondent again references the allegations of child abuse by Petitioner, Opp'n at 19. Respondent also notes the Court's acknowledgement that the parties had a "toxic" relationship and that "the Child was at the center of a heated and contentious family dynamic." Opp'n at 19 (first quoting Order at 5 n.8, then quoting Order at 18). As for the child abuse allegations, the Court agrees with Petitioner that "[a]llowing Respondent to relitigate those rejected allegations in the

6

guise of an equitable defense would be inconsistent with this Court's prior rulings and would improperly contravene ICARA's fee-shifting mandate." Reply at 4. As for the parties' "toxic" relationship and the volatile family dynamic, the record does not establish that Petitioner bears sole responsibility for these circumstances. Both parties described their relationship as toxic. Order at 5 n.8. Further, both sides of the family contributed to the volatility of the family dynamic. *See id.* at 10 (describing an incident where Petitioner threatened the Child's maternal grandmother); *id.* at 8-10 (discussing the Child's therapy in Argentina and the obstacles created by the Child's maternal family). Accordingly, Respondent's arguments regarding "the degree to which the petitioner bears responsibility for the circumstances giving rise to the fees and costs associated with a petition," *Souratgar*, 818 F.3d at 79, do not demonstrate that the award of costs is "clearly inappropriate."

Fourth, Respondent argues that an award of costs will not "deter such conduct from happening in the first place," Opp'n at 19 (quoting Hague International Child Abduction Convention; Text and Legal Analysis, 51 Fed. Reg. 10494-501, 10511 (Mar. 26, 1986)), as an award "will not deter parents in [Respondent's] position from seeking to prevent their children from being further abused," *id.* The Court recognizes that children's safety and welfare are paramount under the Hague Convention, *Tereshchenko v. Karimi*, 102 F.4th 111, 132 (2d Cir. 2024), and the Court agrees that an award of costs is an ineffective deterrent where allegations of child abuse are substantiated. Here, however, the allegations of child abuse were found lacking support, and the record suggests a premeditated plan to retain the Child. *See* Order at 25-30, 32. The purpose served here is to deter forum shopping where a child custody agreement with visitation is ordered by a family court in a country capable of revisiting the best interests of the child. *See* Order at 10-11; *Mota v. Castillo*, 692 F.3d 108, 112 (2d Cir. 2012) ("The Convention's

drafters were particularly concerned by the practice in which a family member would remove a child 'to jurisdictions more favorable to his or her custody claims in order to obtain a right of custody from the authorities of the country to which the child had been taken.'" (quoting Gitter v. Gitter, 396 F.3d 124, 129 (2d Cir. 2005))).  Accordingly, consideration of the equitable factor of deterrence does not render an award of costs "clearly inappropriate" in this case.

Fifth, and finally, regarding whether the case is " a 'difficult one' and 'falls squarely within the heartland of the Hague Convention," *see Duran-Peralta v. Luna*, 16 Civ. 7939 (JSR), 2018 WL 1801297, at *2 (S.D.N.Y. Apr. 2, 2018) (quoting *Cuellar v. Joyce*, 603 F.3d 1142, 1143 (9th Cir. 2010)), Respondent contends that "this was a difficult case involving serious allegations of sexual and physical abuse — allegations that Respondent took, and continues to take, with the utmost seriousness, notwithstanding the Court's ultimate credibility findings," Opp'n at 19-20.  As noted above, the allegations of sexual and physical abuse of the Child were unsubstantiated, and the record suggests Respondent executed a premeditated plan to retain the Child in the United States.  *See* Order at 25-30, 32.  This case therefore falls within the heartland of the Hague Convention.  *See Abbott v. Abbott*, 560 U.S. 1, 24 (2010) (Stevens, J., dissenting) ("When the drafters of the Convention gathered in 1980, they sought an international solution to an emerging problem: transborder child abductions perpetrated by noncustodial parents 'to establish artificial jurisdictional links . . . with a view to obtaining custody of a child.'" (quoting ELISA PÉREZ-VERA, EXPLANATORY REPORT ¶ 11 (1981)); *Gitter*, 396 F.3d at 129 ("The Hague Convention was adopted in 1980 'to protect children internationally from the harmful effects of their wrongful removal or retention and to establish procedures to ensure their prompt return to the State of their habitual residence, as well as to secure protection for rights of access.'" (quoting Hague Convention at Preamble)).

In sum, after considering the relevant equitable factors, the Court finds that an award of reasonable costs is appropriate.

### B. Amount of the Award

Plaintiff requests $57,274.14 in costs. Reply at 9. This amount comprises translation services, interpreting services, psychological expert fees, transcripts, and Argentine legal services. *Id.* at 5-8.

#### 1. Translation Services

First, Petitioner seeks $150 for translation services. Mot. at 7. In opposition, Respondent contends that Petitioner fails to establish the connection between the translation services and this proceeding, as Petitioner's invoice reflects activity dated September 12, 2025, and Respondent did not appear in this action until December 10, 2025. Opp'n at 10; *see* Mot., Exhibit A, Dkt. 90-1. Petitioner asserts that the invoice predates Respondent's appearance because it was incurred to prepare the Petition for the return of the Child. Reply at 5.

Translation costs are expressly recoverable under 28 U.S.C. § 1920. *See Tereshchenko*, 2024 WL 3342759, at *5. The fact that such services were rendered prior to Respondent's appearance in this action does not render them unnecessary to securing the return of the Child under ICARA. *See Ozaltin*, 708 F.3d at 375; *see also Grano*, 2021 WL 3500164, at *7 ("Expenses for translation of Spanish documents for use by English-speaking lawyers and in a proceeding before an English-speaking judge are reasonable."). Further, the $150 amount is reasonable.

Accordingly, Petitioner is awarded in $150 for the costs of translation services.

#### 2. Interpreting Services

Second, Petitioner seeks $11,674.24 for interpreting services. Reply at 5. Respondent objects to the interpreting costs on several grounds, including vendor identity, prior cost sharing,

and lack of pro bono efforts.  Opp'n at 10-11.  Petitioner asserts that he only seeks the costs he actually incurred and that he was not required to seek pro bono interpretating services.  Reply at 5-6.

Expenses incurred for interpreting services are expressly recoverable under 28 U.S.C. § 1920 and are routinely awarded in Hague Convention cases.  *See Tereshchenko*, 2024 WL 3342759, at *5; *Grano*, 2021 WL 3500164, at *7.  In his Reply, Petitioner amended the interpreting costs pursuant the parties' cost-sharing agreement, and upon review, the Court deems such costs reasonable.  *See* Reply at 6-7; Mot., Exhibit B, Dkt. 90-2; Mot., Exhibit C, Dkt. 90-3; Mot., Exhibit D, Dkt. 90-4.  Further, Respondent does not cite, nor is the Court aware of, any authority that required Petitioner to obtain pro bono interpreting services.

Accordingly, Petitioner is awarded $11,674.24 in costs for interpreting services.

### 3.  Psychological Expert Fees

Third, Petitioner seeks $9,450 in psychological expert fees incurred in connection with an evaluation of the Child by Dr. B.J. Cling. ("Dr. Cling").  Mot. at 8; *see* Mot., Exhibit E, Dkt. 90-5; Mot. Exhibit F, Dkt. 90-6.  In opposition, Respondent contends that Dr. Cling's fees were not necessary for the litigation, as Petitioner ultimately elected not to call Dr. Cling to testify at the Hearing.  Opp'n at 11.

Petitioner's election to convert Dr. Cling into a consulting witness rather than a testifying witness did not render his retention unnecessary to securing the return of the Child.  Given the nature of this case and Respondent's allegations, evaluating the evidence required specialized psychological expertise.  Further, Respondent does not cite, nor is the Court of aware of, any authority suggesting that Petitioner's decision not to call Dr. Cling limits his ability to recover Dr. Cling's fees under ICARA.

10

Accordingly, Petitioner is granted $9,450 for the costs of psychological expert fees.

### 4. Transcripts

Fourth, Petitioner seeks $999.90 in transcript costs. Reply at 7-8. Petitioner initially requested $6,500 in transcript costs prior to receipt of the invoices. Mot. at 8. Respondent objected on the grounds that the amount was excessive. Opp'n at 12. Petitioner attached the final invoices to his Reply and thereby reduced the requested amount to $999.90. *See* Reply, Exhibit J, Dkt. 92-1; Reply at 7-8.

Transcription costs are reimbursable under ICARA. *Souratgar*, 818 F.3d at 78. Further, the amount here is documented and reasonable.

Accordingly, Petitioner is granted $999.90 in transcription costs.

### 5. Argentine Legal Services

Fifth, and finally, Petitioner seeks $35,000 in Argentine legal fees, contending that such fees "were necessarily incurred in connection with international child restitution proceedings." Mot. at 8-9. In opposition, Respondent asserts that such fees are not recoverable under the Hague Convention, and even if they were, Petitioner's invoice is insufficient. Opp'n at 12-13; *see* Mot., Exhibit I, Dkt. 90-7 ("Argentine Legal Services Submission").

In asserting that foreign legal services are not recoverable under the Hague Convention, Respondent relies on *Powell v. Powell*, 25-cv-641-JAW, 2026 WL 1078591, at *6 (D. Me. Apr. 21, 2026). However, in *Powell*, the court only denied a portion of the foreign legal fees after determining that "6.45 hours charged to the Petitioner has to do with other work [the lawyer] has done for her in Germany, which would not be chargeable under the Hague Convention." *Id.* Respondent therefore lacks a basis to suggest that the Hague Convention categorially bars recovery for the legal services performed in Argentina.

11

With that said, Petitioner's documentation regarding the Argentine legal services is insufficient. When requesting attorneys' fees, a prevailing party must include sufficient detail to permit the Court to assess whether the amount of time asserted was reasonable. *See Silverman v. Silverman*, Civ.00-2274 JRT, 2004 WL 2066778, at *5 (D. Minn. Aug. 26, 2004). Further, a party may "only recover for fees and costs directly incurred in connection with the federal action." *Grano*, 2021 WL 3500164, at *6. Here, the court is unable to ascertain to what extent the costs are directly connected to this action. Rather than providing itemized entries identifying the date, task performed, and time expended, the submission contains broad descriptions such as "[d]rafting and review of briefs/documentation – 40 hs." Argentine Legal Services Submission. Such broad descriptions do not pass muster. *See, e.g.*, *Silverman*, 2004 WL 2066778, at *5 ("Many entries contain no information about the subject, for example, 'review e-mail correspondence.' Such entries are not appropriately awarded. Other entries contain compound tasks, and the Court is unable to ascertain the amount of time spent on a particular task, and cannot tell, therefore, whether that amount of time is reasonable.").[1]

Accordingly, the Court denies Petitioner's request for the fees associated with legal services performed in Argentina.

## CONCLUSION

For the foregoing reasons, Petitioner's Motion is granted in part and denied in part. Petitioner is hereby awarded $22,274.14 in costs, which includes $150 for translation services, $11,674.24 for interpreting services, $9,450 for psychological expert fees, and $999.90 for transcripts.

---

[1] To the extent that Petitioner requests the opportunity to provide a supplemental declaration from his Argentine counsel, Reply at 8, in light of the equitable factors noted above, particularly as they relate to Respondent's financial circumstances, the Court declines to grant leave for further submissions.

The Clerk of Court is directed to enter judgment consistent with this Memorandum and

Order as to the awarded costs and close this case.

SO ORDERED.

_____/s/_____

ORELIA E. MERCHANT
United States District Judge

June 8, 2026
Brooklyn, New York